IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID A. CAWTHON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15cv429-MHT |
| | ) | [WO] |
| MELISSA HEMINGWAY, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

David A. Cawthon ("Cawthon") is before the court on his complaint under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq*.  *Doc. No. 1*.[1]  Cawthon claims a denial of his right of meaningful access to the courts resulting from the alleged inadequacy of materials in the law library at the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery"), stemming in particular from (1) the removal of the printed set of *American Jurisprudence 2d* ("Am. Jur. 2d") from the library and (2) the replacement of two electronic typewriters in the library with three manual typewriters.  Defendants named by Cawthon are Melissa Hemingway (former Supervisor of Education at FPC Montgomery); Dennis

---

[1] References to "*Doc. No(s).*" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

W. Stamper (Warden at the prison); Martha Underwood (Assistant Warden at the prison); and E. Baskins (Supervisor of Education at the prison).[2]  *Doc. No. 1* at 2, ¶¶ 5–6; *Doc. No. 38.*  Cawthon seeks compensatory and punitive damages as well as declaratory and injunctive relief.

Defendants filed a special report and supporting evidentiary materials addressing Cawthon's claims and arguing that he fails to demonstrate a denial of his right of access to the courts or any other right.  *Doc. No. 43.*  Pursuant to orders entered in this case, the court deems it appropriate to treat the report as a motion for summary judgment.  *See Doc. No. 44* at 3.  Thus, this case is pending on Defendants' motion for summary judgment.  Upon consideration of this motion, the relevant documents, and other materials in the record, the court concludes that Defendants' motion for summary judgment should be granted.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[2] Cawthon also brings his claims against the Southeast Regional Director (SERO) for the BOP (name unknown) and the General Counsel for the BOP (Name unknown).  *Doc. No. 1* at 2, ¶¶ 7 & 8.

any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence to support some element of its case on which it bears the ultimate burden of proof. *Id*. at 322–24.

Once this initial burden is met, and the moving party has demonstrated the absence of a genuine dispute of material fact on the claims, the other party must "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same; therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

3

summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *See Greenberg,* 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive a properly supported motion for summary judgment, the nonmoving party must produce "sufficient [favorable] evidence" that would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); Fed.R.Civ.P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.

1990).  Consequently, Cawthon's *pro se* status does not allow this court to disregard elementary principles of production and proof in a civil case.  *See Mitchell v. Rouse,* 2015 WL 893262, at \*3 (M.D. Ala. 2015).

## III.   DISCUSSION

### A.   Cawthon's Claims

Cawthon states that on or about May 14, 2014, while he was confined at FPC Montgomery, Defendant Hemingway, acting in her capacity as Supervisor of Education at the prison, removed the printed set of Am. Jur. 2d, a multivolume encyclopedia of the United States law, from the prison law library.  *Doc. No. 1* at 3.  Cawthon maintains that the removal of Am. Jur. 2d from the prison law library denied him the right of access to the courts by hampering his ability to "perform meaningful legal research" and also violated Federal Bureau of Prisons ("BOP") Program Statement 1315.07, which lists the complete set of Am. Jur. 2d among "required main law library materials."  *See id.* at 9–11. Cawthon further states that on or about January 26, 2015, Hemingway replaced two electronic typewriters in the prison law library with three manual typewriters, resulting in a denial of his right of access to the courts.  *See id.* at 3 & 7–10.

### B.   Defendants' Response

Defendants filed a special report responding to Cawthon's complaint and arguing that Cawthon demonstrates no denial of his right of access to the courts.  *Doc. No. 43*. Defendant Hemingway acknowledges that in May 2014, she removed numerous printed law books, including Am. Jur. 2d, from the law library at FPC Montgomery "to bring the library up to date." *Doc. No. 43-1* at 3, ¶ 4.  Removal of the printed books was part of the

BOP's implementation of the LexisNexis Electronic Law Library system ("ELL") to replace printed books in all federal prison law libraries. *Id.* When Am. Jur. 2d was removed from the law library at FPC Montgomery, the LexisNexis ELL had been in operation at the library since 2009. *Id.* The LexisNexis ELL provides prisoners with electronic access to an extensive library of legal research materials specifically designed for inmate use ELL, is uniform across all BOP facilities, and is regularly updated by LexisNexis. *See Doc. No. 43-3*; *Doc. No. 43-1* at 3–4, ¶ 4. Although the LexisNexis ELL does not contain Am. Jur. 2d., Hemingway maintains it contains "the same or comparable materials" to those listed in the law library inventory outlined in BOP Program Statement 1315.07. *Doc. No. 43-1* at 3, ¶ 4; *see Doc. No. 43-2.* Defendants state that BOP Program Statement 1315.07 has not been updated since the BOP's implementation of the LexisNexis ELL. *See Doc. No. 43* at 5. Defendants note that the FPC Montgomery law library has ten LexisNexis ELL work stations available for inmates to conduct legal research seven days a week. *Doc. No. 43-1* at 4, ¶ 5.

Hemingway acknowledges that in January 2015, she removed two Swintec model 7040 electronic typewriters from the law library at FPC Montgomery because they were not working properly. *Doc. No. 43-1* at 4, ¶ 6. The two typewriters had a memory and screen display. *Id.* at ¶¶ 6–7. According to Hemingway, the typewriter keys were jamming and the screens were not working properly. *Id.* at ¶ 6. The machines were several years old and had been repaired several times prior to their removal. *Id.* After the two malfunctioning typewriters were removed, five other typewriters remained in the law library. *Id.* In May 2015, Hemingway installed three new Swintec model 2410 cc

typewriters in the law library. *Id*. at ¶ 7. These typewriters are manual and lack memory or display screens. *Id.* Hemingway avers that she selected these typewriters because they are designed for a correctional setting, are user-friendly, and cost less. *Id*. at 4–5, ¶ 7.

## C.   Removal of Am. Jur. 2d and Electronic Typewriters from Law Library

### 1.   *Access to Courts*

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. Subsequently, in *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified that prisoners' contentions of denial of access to courts must show actual injury as a "constitutional prerequisite." 518 U.S. at 349–51. Under *Lewis*, an actual injury is established by a prisoner showing that a direct appeal of his conviction and sentence, a habeas petition, or a civil rights action vindicating a basic constitutional right was frustrated or impeded and that this action was nonfrivolous. *Id.* at 353–55; *see Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

The Supreme Court in *Lewis* explained that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 351 (quoting *Bounds*, 430 U.S. at 825). The *Lewis* Court observed that *Bounds* recognized that the availability of a prison law library was only one way to ensure

meaningful access to the courts.  *Id.*  The *Lewis* Court also admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.   *Id.* at 356.   A federal district court must "'scrupulously respect[ ] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'"  *Lewis*, 518 U.S. at 363 (quoting *Bounds*, 430 U.S. at 832–33).

"Because *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis*, 518 U.S. at 351.   Rather, to establish actual injury an inmate must demonstrate that his efforts to pursue a direct appeal of his conviction, a habeas petition, or a civil rights action vindicating a basic constitutional right were frustrated or impeded by an actual deficiency in the library or in a legal assistance program or by an official's action and that his action was not frivolous.  518 U.S at 353–55*; see Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006); *Bass v. Singletary*, 143 F.3d 1442, 1444-45 (11th Cir. 1998).  An actual injury may be shown by establishing that a claim could not be presented to a court because an inmate was so stymied by the law library's inadequacies that the inmate could not prepare a complaint.  *Lewis,* 518 U.S. at 351.   The claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable'

nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Here, Cawthon presents only conclusory allegations of a constitutional violation and fails to establish that the removal of Am. Jur. 2d from the FPC Montgomery law library and the replacement of the electronic typewriters in the law library with manual typewriters deprived him of the capability to pursue nonfrivolous claims before this or any other court. Cawthon asserts the sort of hypothetical claims alleging theoretical deficiencies in the prison law library that the Supreme Court rejected in *Lewis*. He fails to describe a specific claim attacking his sentence or challenging his conditions of confinement that he was prevented from asserting because of the law library's alleged inadequacies. Although Cawthon suggests he was impeded from litigating a *qui tam* action under the False Claims Act, *see* Doc. No. 1 at 8, ¶ 48, such an action is not one of the types of actions where, according to *Lewis*, an inmate may suffer a violation of access to courts. Under *Lewis*, an inmate can only suffer a violation of the right of access to courts in an action attacking a conviction, directly or collaterally, or in a civil rights action challenging his conditions of confinement. *Lewis*, 518 U.S. at 355. *See, e.g., Wilson*, 163 F.3d at 1287 (finding that an *in rem* forfeiture action was not one of the actions recognized by *Lewis* in which an inmate may have a claim for the denial of access to courts); *Gilbert v. Gunja*, 184 F.3d 817, at *1 (5th Cir. 1999) (unpublished) (holding that no violation of access to courts occurred when inmate was denied access to Texas books to challenge the state court judgment ordering him to pay child support because *Lewis* limited his right of access to courts to cases

challenging his conviction, sentence, or conditions of confinement); *Briggs v. Donahue*, 2005 WL 1787863, at *1–2 (D. Idaho 2005) (unpublished) (same).

It is undisputed that, while at FPC Montgomery, Cawthon had unfettered access to the law library and the ability to conduct legal research using the LexisNexis ELL.  The evidence further demonstrates that no Defendant inhibited Cawthon's preparation of legal documents, filing of pleadings, or processing of any cause of action.  Cawthon has failed to come forward with any evidence that Defendants' actions about which he complains deprived him of the capability of pursuing any nonfrivolous legal claims recognized under *Lewis*.

### 2.   *Violation of BOP Program Statement*

As to Cawthon's claim that the removal of Am. Jur. 2d from the prison law library violated BOP Program Statement 1315.07, the alleged noncompliance with a prison regulation does not violate any constitutional or statutory right enjoyed by Cawthon.  *See Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Robinson v. Vasquez*, 2007 WL 4209370, at *2 (S.D. Ga. 2007) ("This Court cannot find that the bare allegations of non-compliance with a prison regulation is sufficient to give rise to a constitutional violation.").  *See also Reno v. Koray*, 515 U.S. 50, 60–61 (1995) (explaining that BOP program statements are internal agency guidelines rather than published regulations subject to the rigors of the APA); *Moon v. Walton*, 2014 WL 788895, at *2 (S.D. Ill. 2014) (holding that "Program Statement[s] . . . do not give rise to any due process rights").  "The BOP's purported violation of its own

10

program statement simply is not a violation of federal law[.]" *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011).   Consequently, Cawthon's claim regarding the alleged violation BOP Program Statement 1315.07 fails to show a deprivation of any constitutional or statutory right enjoyed by Cawthon.

For the reasons stated, Cawthon's claims entitle him to no relief, and summary judgment on such claims is due to be granted in favor of Defendants.

## IV.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of Defendants.

3.  This case be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before August 14, 2018.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court; therefore, it is not appealable.   Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677

F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities*, Inc., 667 F.2d 33 (11th Cir.

1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc),

adopting as binding precedent all of the decisions of the former Fifth Circuit handed down

prior to the close of business on September 30, 1981.

DONE this 31st day of July, 2018.

　　 /s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE